**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX, INC.** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | **CASE NO. 6:07 CV 80** |
| | § | **PATENT CASE** |
| **MICROSOFT CORPORATION** | § | |
| | § | |
| Defendant | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Microsoft Corporation ("Microsoft's") Motion to Dismiss for VirnetX's Lack of Standing to Bring Suit (Docket No. 83) and Science Applications International Corporation's ("SAIC") Motion for Leave to File Opposition to Defendant Microsoft Corporation's Motion to Dismiss for VirnetX's Lack of Standing to Bring Suit (Docket No. 91). Having considered the parties' oral arguments and written submissions, the Court **DENIES** Microsoft's Motion to Dismiss and **GRANTS** SAIC's Motion for Leave. The Court **ORDERS** joinder of SAIC as a plaintiff.

**BACKGROUND**

VirnetX, Inc. ("VirnetX") acquired rights in U.S. Pat. Nos. 6,502,135 (the "'135 Patent"), 6,839,759 (the "'759 Patent"), and 7,188,180 (the "'180 Patent") (collectively, the "Patents-in-Suit") from SAIC, a third-party not involved in this lawsuit, through a series of agreements. On August 12, 2005, SAIC and VirnetX entered into a "Patent License and Assignment Agreement" and a "Security Agreement." On November 2, 2006, the parties executed "Amendment No. 1 to Patent License and Assignment Agreement." On December 21, 2006, the parties recorded an assignment

with the Patent & Trademark Office ("PTO"). VirnetX sued Microsoft on February 15, 2007, and alleged Microsoft infringed various claims of '135 and '759 Patents. On March 28, 2008, VirnetX and SAIC executed "Amendment No. 2 to Patent License and Assignment Agreement." VirnetX amended its complaint to allege infringement of the '180 Patent on April 5, 2007.

Microsoft claims these agreements do not transfer all substantial rights in the Patents-in-Suit to VirnetX and moves to dismiss VirnetX's claims for lack of standing. In the alternative, Microsoft moves to join SAIC as a plaintiff.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6). *See id.* When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Courts only grant motions to dismiss when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *See Home Builders Ass'n of Mississippi, Inc.,* 143 F.3d at 1010.

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the cause of action. *Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750–51 (E.D. Tex. 2007) (Davis, J.). A plaintiff has constitutional standing to pursue a patent infringement action if it shows: (1) the defendant's alleged infringement cause the plaintiff an injury in fact; (2) that the injury is fairly traceable to the alleged misconduct of the defendant; and (3) that a favorable decision is likely to redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345–47 (Fed. Cir. 2001). To prove an "injury in fact, " the plaintiff must show the alleged infringer invaded a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (internal quotations omitted). Parties that hold exclusionary rights and interests in a patent have constitutional standing to sue infringers. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

A party with constitutional standing that possesses all substantial patent rights is an effective patentee and has prudential standing to sue infringers without joinder of others who suffer a legal injury from infringement and possess substantial patent rights. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). If a party has constitutional standing but does not possess all substantial patent rights, the party lacks prudential standing and generally must sue as a co-plaintiff with other parties who suffer a legal injury from infringement and possess rights to the patent. *See Intellectual Property Dev.*, 248 F.3d at 1348. A plaintiff cannot cure constitutional standing defects after it files suit, but a plaintiff with constitutional standing may cure prudential standing defects after it files suit. *See id*; *IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324, 1326–27 (Fed. Cir. 2007); *Morrow*, 499 F.3d at 1344.

To determine whether an agreement confers standing on the transferee, courts focus the

substance of the transferred patent rights and the parties' intentions. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia Spa*, 944 F.2d 870, 875 (Fed. Cir. 1991); *Intellectual Property Dev.*, 248 F.3d at 1342; *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189–90 (Fed. Cir. 2007). In making such a determination, it is helpful to focus on each party's collection of sticks within the bundle of patent rights as a result of the agreement. *Vaupel*, 944 F.2d at 875; *Intellectual Property Dev.*, 248 F.3d at 1342; *see also Morrow*, 499 F.3d at 1338, 1341 n.8.

If the plaintiff lacks constitutional standing, the court must dismiss the plaintiff's claims for lack of subject matter jurisdiction. *Id.* at 1344; *Propat*, 473 F.3d at 1194. If a plaintiff has constitutional standing but lacks prudential standing, the court proceeds under Federal Rule of Civil Procedure 19 to determine if joinder of the parties with the remaining ownership interests in the patent is warranted. *See id.* at 1340. A court can only join parties with constitutional standing to bring the patent infringement action. FED. R. CIV. P. 19(a); *See Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031, 1034 (Fed. Cir. 1995) (holding nonexclusive licensee did not have standing to join infringement suit alongside the patentee, as the licensee suffered no legal injury from infringement and "[t]o have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue"); *Sicom Sys., Ltd. v. Agilient Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even join a suit with the patentee because the nonexclusive licensee suffers no legal injury from infringement."); *Morrow*, 499 F.3d at 1340–41 (stating that party that lacks constitutional standing cannot cure the standing defect by adding patent owner to the suit).

Rule 19(a) governs the joinder of persons needed for just adjudication. So long as a person is subject to service of process and joinder will not deprive the court of subject matter jurisdiction,

Rule 19(a)(1) requires joinder if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

The nature of Rule 19 requires a court to make "highly practical, fact-based decisions" when it applies the rule. *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). In such an analysis, courts seek to maximize effective relief with the minimal expenditure of judicial energy. *Gentry v. Smith*, 487 F.2d 571, 579–80 (5th Cir. 1973). If the party should join as a plaintiff, but so refuses, the court may, in a proper case, join the party as an involuntary plaintiff. FED. R. CIV. P. 19(a)(2).

If the court cannot join a person described in Rule 19(a)(1)(A) and (a)(1)(B), the court determines if in equity and good conscience the case should proceed or be dismissed. FED. R. CIV. P. 19(b). Courts consider multiple factors to determine the appropriate course of action. *Id.*

## ANALYSIS

The parties executed a series of agreements that transferred interests in the Patents-in-Suit from SAIC to VirnetX. The agreements state California law governs interpretation of the agreements and the Court will interpret the agreements under California Law. *See Rhone-Poulenc Agro v. Dekalb Genetics Corp.*, 284 F.3d 1323, 1327–28 (Fed. Cir. 2002). Under California law, courts must interpret contracts "as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." CAL. CIV. CODE § 1636.

Courts infer the parties' intent from the written provisions of the contract, and if the provisions are susceptible to only one interpretation, the contract's words alone show the parties' intent. CAL. CIV. CODE § 1638, 1639.

**Constitutional Standing**

At the time VirnetX filed suit, the parties had executed the Patent License and Assignment Agreement, the Security Agreement, Amendment No. 1 to Patent License and Assignment Agreement, and the PTO Assignment. As a result of these agreements, VirnetX had all rights to the Patents-in-Suit, subject to the following rights retained by SAIC: SAIC's reversionary rights; SAIC's security interest in the Patents-in-Suit; SAIC's right to prosecute a patent infringement suit if VirnetX fails to terminate the infringement, enter a reasonable license agreement, or bring an enforcement action against the infringer within a specified period of time; SAIC's right to receive a percentage of VirnetX's revenues from licensing and a percentage of VirnetX's net recovery from proceedings against alleged infringers; and SAIC's right to reasonably withhold its consent to proposed VirnetX licenses. Amendment No. 2 to Patent License and Assignment Agreement broadens VirnetX's patent rights.

VirnetX has constitutional standing to sue Microsoft for patent infringement. Microsoft's alleged infringement causes VirnetX a legal injury, as it has the right to sue infringers, is entitled to damages from infringement, and within limits, has the ability to license the Patents-in-Suit. *See Morrow*, 499 F.3d at 1341–42. Microsoft's alleged infringement causes damage to VirnetX's proprietary interest in the Patents-in-Suit and damages or injunctive relief will redress VirnetX's injury. Thus, VirnetX has constitutional standing to sue Microsoft. *See Intellectual Property Dev.*, 248 F.3d at 1345–47.

**Prudential Standing**

VirnetX lacks prudential standing to sue Microsoft for infringement of the Patents-in-Suit, as SAIC retains substantial rights in the Patents-in-Suit. After execution of Amendment No. 2 to Patent License and Assignment Agreement, SAIC has the following rights to the Patents-in-Suit.

<u>Equity Interest in Licensing and Litigation Proceeds</u>

Under the agreements, SAIC is entitled to 35% of the recovery in this litigation after reimbursement of SAIC and VirnetX's out-of-pocket costs in connection with the litigation, including legal fees SAIC has already paid. Against other parties, SAIC's right to recover licensing revenue and litigation proceeds varies and may be capped once VirnetX's pays SAIC a set amount.

VirnetX and SAIC cite *Vaupel* and claim SAIC's right to recover litigation and licensing proceeds is a way to compensate SAIC for Patents-in-Suit and is not a retention of a substantial right. In *Vaupel*, the grantee possessed all substantial rights to the patent even though the grantee agreed to pay the grantor any money damages obtained from third-parties based on infringement of the conveyed patent up to a maximum of five-percent of third-party sales. 944 F.2d at 875. The Court stated "the right to receive infringement damages was merely a means of compensation under the agreement; this is not inconsistent with an assignment." *Id.* (citing *Rude v. Westcott*, 130 U.S. 152, 162–63 (1889)).

The law has slightly developed since *Vaupel*. In *Intellectual Property Development*, the grantor's right to collect 50% of profits realized from litigation over the conveyed patent was a neutral factor in the court's analysis to determine whether the grantee acquired all substantial rights under the patent. 248 F.3d at 1344 n.11. The court analyzed the other provisions in the agreement and concluded the grantee did not obtain all substantial rights under the patent. *Id.* at 1342–45.

In *Propat*, the grantor's retention of a "substantial share of the proceeds" from licensing and

7

litigation activities was consistent the grantor's retained ownership of the patent. 473 F.3d at 1191. After an analysis of the grantor's retained rights, the court held the grantee did not posses all substantial rights to the patent. *Id.* at 1190–93. The combination of the grantor's retained economic interest and substantial control over decisions that affect patent rights were such that the grantee did not have constitutional standing to sue, let alone all substantial rights to the patent in suit, and could not bring suit with the grantor as a co-plaintiff. *Id.* at 1191, 1194.

In this case, SAIC's 35% equity interest in the proceeds from the Patents-in-Suit is consistent with a retained ownership interest in the Patents-in-Suit. However, whether this provision deprives VirnetX of all substantial rights under the Patents-in-Suit depends on whether SAIC also retained sufficient control over decisions that affect the rights to the Patents-in-Suit.

Control Over Decisions that Affect Rights to Patents-in-Suit

Under Amendment No. 2 to the Patent License and Assignment Agreement, SAIC has a nonexclusive license to practice the Patents-in-Suit. While VirnetX has the sole right to enforce the Patents-in-Suit, VirnetX is obligated to take commercially reasonable steps to enforce the Patents-in-Suit to protect SAIC's interest to receive the bargained-for consideration. In this case, the bargained-for consideration is SAIC's 35% equity interest in the Patents-in-Suit.

SAIC also has "review rights," and VirnetX is obligated notify SAIC of any proposed license or assignment of the Patents-in-Suit or any proposed settlement of an action to enforce the Patents-in-Suit. After it receives notice, SAIC may object to the proposed course of action if the license, assignment, or settlement would unreasonably diminish the agreed bargained-for consideration. VirnetX may request SAIC's consent to any proposed license, assignment or settlement, and SAIC may not unreasonably withhold its consent. SAIC and VirnetX argue SAIC merely has the right to object.

SAIC also has reversionary rights in the Patents-in-Suit if VirnetX does not pay SAIC on time, does not pay a certain amount by a determined date, or if the Patent License and Assignment Agreement terminates before VirnetX pays SAIC the maximum amount.  It appears from the facts in the record that SAIC has not received the maximum amount.  SAIC may terminate the agreements, and have the Patents-in-Suit revert to SAIC, in a number of scenarios, the two most important being if VirnetX materially breaches any provision and if SAIC exercises its rights under the Security Agreement.  Under these reversion provisions, the Patents-in-Suit will revert back to SAIC if VirnetX acts in a commercially unreasonable manner such that it does not protect SAIC's interest in the bargained-for-consideration, which is SAIC's right to 35% of the net litigation proceeds.

SAIC retains a security interest in the Patents-in-Suit.  In the Security Agreement, VirnetX covenants that it will not create any right of any person in the Patents-in-Suit and will not sell or otherwise dispose of any interest in the Patents-in-Suit except in narrow circumstances.  In the event of default, SAIC has the right to repossess the Patents-in-Suit, through its rights under the Security Agreement and under the Patent License and Assignment Agreement.  Thus, while SAIC may only have the right to "object" to VirnetX's licensing, settlement, and assignment activity under Amendment No. 2 to the Patent License and Assignment Agreement, SAIC has substantial reversionary rights in the event SAIC disapproves of VirnetX's licensing or assignment actions.

The restrictions on assignment, settlement, and licensing of the Patents-in-Suit in the Security Agreement and the reversion provisions in the Patent License and Assignment Agreement weigh towards a finding that SAIC did not convey all substantial patent rights to VirnetX.  *Propat*, 473 F.3d at 1191.  SAIC's reversionary right to the Patents-in-Suit if VirnetX does not pay SAIC a fixed amount by a certain date, although not dispositive, indicates SAIC retains an interest in the

Patents-in-Suit. *Id.* at 1191–92. Further, while VirnetX may have the sole right to enforce the Patents-in-Suit, VirnetX must act in a commercially reasonable manner, and given SAIC's reversionary rights and rights under the Security Agreement, SAIC has the right to influence or control VirnetX's enforcement decisions, which further indicates SAIC did not transfer all substantial patent rights to VirnetX. *See id.* SAIC's retained rights are such that VirnetX does not have the right to indulge infringement, which weighs towards a finding that SAIC did not completely convey the exclusive right to sue and that VirnetX lacks prudential standing. *See Sicom Sys.*, 427 F.3d at 979.

Where the grantor retains rights similar to SAIC's retained control rights, a grantee may possess all substantial patent rights. *See Vaupel*, 944 F.2d at 875 (holding grantee held all substantial patent rights where grantor retained reversionary right to patent if grantee filed bankruptcy and grantee could not sublicense the patent without grantor's consent); *Speedplay*, 211 F.3d at 1251–52 (holding grantee held all substantial patent rights where grantor retained reversionary right to patents in event of breach or insolvency and grantee could not assign its interest in the patents without consent of the grantor, which the grantor could not unreasonably withhold). In this case, however, the agreements couple SAIC's control rights with a 35% interest in the proceeds from this litigation. While SAIC may only exercise its rights to protect its bargained-for-consideration, SAIC's consideration is an unbounded 35% interest in the proceeds from this litigation, and SAIC's portion of the bundle of rights to the Patent-in-Suit is tantamount to an ownership interest rather than a bare license with no substantial patent rights. Thus, VirnetX does not hold all substantial rights under the Patents-in-Suit and does not have prudential standing to bring this infringement action. *See Propat*, 473 F.3d at 1191, 1191 (holding grantor did not grant all substantial rights where grantor "retain[ed] an economic interest in the patent and a substantial

measure of control over decisions affecting the patent rights"); *Israel Bio-Engineering Project v. Amgen, Inc.*, 401 F.3d 1299, 1304–05 (Fed. Cir. 2007) ("[A]n ownership interest [in the patent-in-suit], however, would not be sufficient to give [the plaintiff] prudential standing to sue for infringement, as [it] would have to join all the other co-owners in order to establish such standing.").

**Joinder**

As VirnetX does not have prudential standing to bring the patent infringement action against Microsoft, the Court must determine whether SAIC is a necessary party under Rule 19.[1] *See Intellectual Property Dev.*, 248 F.3d at 1348; *Morrow*, 499 F.3d at 1340. When the plaintiff-grantee has constitutional standing but lacks prudential standing, courts generally join the grantor to avoid the potential for multiple litigations and multiple recoveries against the same alleged infringer. *See id.*

Joinder of SAIC is proper under Rule 19(a)(1)(B). SAIC's absence would leave Microsoft subject to a substantial risk that SAIC would exercise its reversionary rights during the pendency of this litigation, which would result in dismissal of the case or would stay the case pending arbitration of SAIC and VirnetX's rights to the Patents-in-Suit. Depending on the arbitration outcome, Microsoft would subsequently face duplicate litigation against SAIC or VirnetX, potentially in another district. Further, SAIC's absence would leave VirnetX subject to a substantial risk of inconsistent obligations when its interests and SAIC's interests diverge. Thus, SAIC's joinder is proper under Rule 19.

The Court will no longer afford SAIC the non-party discovery protections of Federal Rule

---

[1] VirnetX and SAIC argue SAIC is a bare licensee, and therefore lacks constitutional standing and cannot be joined under Rule 19. *See Ortho*, 52 F.3d at 1031, 1034. However, SAIC's control rights and economic interest in this litigation are such that SAIC is more than a bare licensee and meets the *Lujan* factors. Thus, it has constitutional standing to sue Microsoft for infringement of the Patents-in-Suit. *See Intellectual Property Dev.*, 248 F.3d at 1348; *Morrow*, 499 F.3d at 1340.

of Civil Procedure 45 while SAIC maintains substantial rights to the Patents-in-Suit. This Court adheres to a policy of liberal, open, and forthright discovery. *Garmin Ltd. v. TomTom, Inc.*, No. 2:06-CV-338, 2007 WL 2903843, at *8 (E.D. Tex. Oct. 3, 2007) (Davis, J.). The Court does not tolerate gamesmanship between litigants to shield or delay production of otherwise discoverable items. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754 (E.D. Tex. 2004) (Davis, J.). Nor will this Court allow a non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26, the Local Rules, particularly L.R. 26 and P.R. 3-2, and the Discovery Order. Such an interested non-party may not use agreements or shell entities to obtain the benefit of this Court's liberal discovery policy while the interested non-party shelters under Rule 45, escalates an accused infringer's litigations costs, and withholds discoverable information. The Court will not tolerate such a manipulation of its liberal discovery policy and will use its equitable power to remedy future situations that cannot be cured by joinder.

## CONCLUSION

Having considered the parties' oral arguments and written submissions, the Court **DENIES** Microsoft's Motion to Dismiss for VirnetX's Lack of Standing to Bring Suit (Docket No. 83) and **GRANTS** SAIC's Motion for Leave to File Opposition to Defendant Microsoft Corporation's Motion to Dismiss for VirnetX's Lack of Standing to Bring Suit (Docket No. 91). SAIC has five Court days to join as a plaintiff.

**So ORDERED and SIGNED this 3rd day of June, 2008.**



_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

12